UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SALA-THIEL THOMPSON
                                                      PRISONER CASE NO.
    v.                                                  3:04-cv-2084 (AWT)

THERESA LANTZ, ET AL.

## RULING ON PENDING MOTIONS

The plaintiff, Sala-thiel Thompson, is currently confined at the Cheshire Correctional Institution, in Cheshire, Connecticut.  Pending before the court are the plaintiff's motions for injunctive relief, for a conference and for prejudgment remedies.  The court construes the plaintiff's motion for a conference as a motion for a hearing on the motions for injunctive relief.  For the reasons set forth below, all of the motions are being denied.

I.      Motion for Prejudgment Remedy [doc. # 3]

The plaintiff asks the court to issue a prejudgment lien against defendants Choinski and Dzurenda in the amount of $175,000.00, against defendants Lantz, Milling and Levesque in the amount of $325,000.00 and against defendants Lappin, Watts, Hershberger, Rau and Wilson in the amount of $420,000.00.  Rule 64 of the Federal Rules of Civil Procedure permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be entered in an action.  See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S. 423, 436 (1974); Cordoba Shipping Co., Ltd. v. Maro Shipping, Ltd., 494 F. Supp. 183, 186 (D. Conn. 1980).  Rule 64 provides in pertinent part:

> At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought . . . .

Fed. R. Civ. P. 64. Connecticut General Statutes § 52-278a et seq. governs prejudgment remedies and "provides that a plaintiff suing for a money judgment may attach a defendant's real or personal property during litigation, if the plaintiff follows the statutory procedures designed to protect the defendant." Cordoba, 494 F. Supp. at 186. Connecticut General Statutes § 52-278c sets forth the documents required to be filed with the court and the requirements of service on the defendant of notice of intent to secure a prejudgment remedy. A prejudgment remedy may be obtained when the plaintiff establishes that there is probable cause to sustain the validity of his claims. See Conn. Gen. Stat. § 52-278d.

Connecticut General Statutes § 52-278b provides that "no prejudgment remedy shall be available to a person in any action at law or in equity (1) unless he complied with the provisions of sections 52-278a to 52-278g inclusive . . . ." Conn. Gen. Stat. § 52-278b. Connecticut General Statutes § 52-278c requires that an affidavit be submitted with the application for prejudgment remedy. See Conn. Gen. Stat. § 52-278c(a)(2); Lauf v. James, 33 Conn. App. 223, 227-29, 635 A.2d 300, 302-03 (1993) (section 52-278c(a) requires that an affidavit be submitted with an application for prejudgment remedy in order for the trial court to grant a prejudgment remedy). The affidavit must be "sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought . . . will be rendered in the matter in favor of the plaintiff." Conn. Gen. Stat. § 52-278c(a)(2). Here, the plaintiff has not submitted an affidavit with his motion. Thus, the plaintiff

has failed to comply with Connecticut General Statutes § 52-278c(a)(2).

In addition, Connecticut General Statutes § 52-278c requires that a notice and claim form containing certain language must be attached to the application for prejudgment remedy. See Conn. Gen. Stat. § 52-278c(e), (f), (g). The plaintiff has failed to attach the appropriate notice and claim form to his application for prejudgment remedy. Because the plaintiff's motion for prejudgment remedy does not comply with subsections (a)(2), (e), (f) and (g) of Connecticut General Statutes § 52-278c, it is being denied.

II.     Motions for Preliminary Injunctive Relief  [docs. ## 4, 9, 10]

The petitioner seeks a court order directing the defendants to provide him with a Kosher diet, to transfer him to a federal facility to enable him to have access to a law library and legal materials, to place in him a single cell and to investigate an altercation between himself and Correctional Officer Philippi. The defendants have filed a memorandum and affidavits in opposition to the motions for injunctive relief.

While a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony is not required in all cases. See Drywall Tapers & Pointers Local 1974 v. Local 530, 954 F.2d 69, 72 (2d Cir. 1992). Where, as here, "the record before the district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice ¶ 65.04[3] (2d ed.1995]. In this case, the court finds that oral testimony and argument is not necessary. Accordingly, the plaintiff's motion for a conference to discuss the allegations in the motions for injunctive relief is being denied.

"[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)).  In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo. 1976), aff'd, 426 U.S. 943 (1976).

In this circuit the standard for injunctive relief is well established.  To warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000).  Where the moving party seeks a mandatory injunction, i.e., injunctive relief which changes the parties' positions rather than maintains the status quo, or the injunction requested "will provide substantially all the relief sought, and that relief cannot be undone even if the defendant prevails at a trial on the merits," the moving party must make a stronger showing of entitlement. Brewer, 212 F.3d at 744 (internal quotation marks and citation omitted).  A mandatory injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested" or where "extreme or very serious damage will result from a denial of preliminary relief." Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)(citations omitted).

Although a showing that irreparable injury will be suffered before a decision on the merits may be reached is insufficient by itself to require the granting of a preliminary injunction, it is

nevertheless the most significant condition which must be demonstrated.  See Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir. 1985).  To demonstrate irreparable harm, a plaintiff must show an "'injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.'"  Forest City Daly Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (quoting Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998)).

The plaintiff alleges that he is a federal prisoner who was transferred from a federal prison facility in Illinois to a prison facility in Connecticut pursuant to an interstate corrections compact.  He alleges that all of his legal documents and books were lost in transit and that Connecticut prison officials have denied him access to a law library and legal assistance.  He claims that numerous cases he has filed have been dismissed because of his lack of access to legal materials, and he seeks to be transferred to a federal prison facility where he can have access to a law library.

Although the plaintiff states that some of his legal documents and legal books were lost during his transfer from Illinois to Connecticut and that prison officials have denied him access to a law library and legal materials, he does not allege that he has been irreparably harmed by the loss of these items or the denial of access to legal materials and the library.  In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court clarified what is encompassed in an inmate's right of access to the courts and what constitutes standing to bring a claim for the violation of that right.  First, the Court held that to show a violation of his right of access to the courts, an inmate must allege an actual injury.  Id. at 349.  The fact that an inmate may not be able to litigate effectively, once his claim is brought before the court, is insufficient to demonstrate actual injury.  Id. at 355.  Rather, the inmate must show that he was unable to file the initial complaint or petition, or that the complaint he filed

was so technically deficient that it was dismissed without consideration of the merits of the claim. Id. at 351.

The plaintiff claims generally that numerous cases have been dismissed and papers have been returned unfiled. These unsupported allegations are insufficient to demonstrate that the plaintiff has suffered an injury as a result of his lack of access to legal materials and a law library. The plaintiff claims that the Inmates' Legal Assistance Program in Hartford, Connecticut has refused to assist him with his cases. A letter from an attorney at Inmates' Legal Assistance attached to the plaintiff's reply to defendants' response to the motions for injunctive relief does not support the plaintiff's allegation. The attorney indicates that Inmates' Legal Assistance is available to assist the plaintiff with claims concerning conditions of confinement in Connecticut. Although the attorney informs the plaintiff that she cannot assist him with copies of case law related to his federal criminal conviction, the warden at Cheshire Correctional Institution has informed the plaintiff that he can contact two different individuals at the Bureau of Prisons regarding his requests for copies of federal cases. Since arriving in Connecticut in January 2004, the plaintiff has filed four cases in this court. He has filed two habeas petitions and one civil rights action concerning his conditions of confinement and one habeas petition challenging his federal conviction. One of the habeas petitions includes a table of contents, citations to over thirty cases and a thirty-nine page memorandum of law, and the other includes a memorandum of law and exhibits. The instant civil rights action and the habeas petition challenging the plaintiff's federal conviction remain pending. Neither of the other two habeas petitions were dismissed as technically deficient. One was dismissed without prejudice to permit the plaintiff to exhaust his state court remedies as to claims in the petition, and the other was transferred to another district court. Accordingly, the plaintiff has failed to

demonstrate that he has been irreparably harmed by the alleged denial of access to a law library and legal materials, and his request to be transferred to a federal prison facility with a law library is being denied.

The plaintiff also complains that prison officials in Connecticut have denied him a Kosher diet and instead have put him on the Common Fare diet. He claims to have suffered diarrhea, vomiting and heartburn as a result of the non-Kosher diet. In response to the plaintiff's claims, the defendants have filed affidavits of Robert Franks, the Correctional Chief of Food Services for the State of Connecticut Department of Correction, and Robert DeVeau, the Correctional Food Service Manager for the State of Connecticut Department of Correction. Robert Franks avers that the foods on the Common Fare diet are prepared and served using sterilized pans and are kept separate from other foods on the regular menu. Robert Franks states that a Rabbi has advised him that all of the items on the Common Fare diet are acceptable to an inmate seeking to eat only Kosher food. Robert DeVeau avers that he has completed a nutritional analysis of the Common Fare diet and that the Common Fare diet meets or exceeds the recommended dietary allowances for an adult male as established by the National Academy of Sciences.

The plaintiff has submitted no evidence to contradict the affidavits of Franks and DeVeau, which indicate that the Common Fare diet includes only Kosher foods. Dr. Blanchette has filed an affidavit indicating that the plaintiff's medical record includes no complaints of diarrhea or vomiting this year. In addition, the plaintiff's medical records reflect no complaints about the food since March of this year. The court concludes that the defendants are offering the plaintiff a diet that includes food that has been prepared according to the Jewish dietary laws and that the plaintiff has not alleged any facts or offered any evidence to demonstrate that he is currently suffering any ill

effects from the diet offered to him.  Thus, the plaintiff has failed to demonstrate that he will suffer irreparable harm if his request for injunctive relief is not granted.

The plaintiff alleges that he has been forced to reside in a single occupancy cell with another cellmate.  The plaintiff claims that he may be harmed by his cellmate because members of the prison staff have informed other inmates that he is a former police officer.  The plaintiff states that two other inmates have been beaten by their cellmates this year.  The defendants respond that the plaintiff is currently in a cell by himself, but is not on single cell status.

Double celling, in and of itself, does not constitute a violation of the Eighth Amendment ban on cruel and unusual punishment.  See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981).  In his reply to the defendants' response to his request for injunctive relief, the plaintiff does not contest the fact that he is currently in a cell by himself.  Even if the plaintiff is housed in a cell with another inmate in the future, a claim that any cellmate might assault him is speculative.  Possible future harm is insufficient to support a request for injunctive relief.  See Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995).

The plaintiff alleges that defendant Philippi assaulted him on February 10, 2005.  Defendant Philippi has filed an affidavit in which he avers that the plaintiff refused to obey several orders to close the cell door and began to walk towards him.  The plaintiff refused to return to his cell despite additional orders to do so and proceeded to push his chest into defendant Philippi's chest.  Another correctional officer and defendant Philippi then secured the plaintiff's arms and placed him in handcuffs.   The plaintiff claims that he sustained an injury to his left wrist during the incident.

The plaintiff claims that he may be harassed and threatened by defendant Philippi in the future and requests an investigation into the incident and other unspecified injunctive relief.  Dr.

Blanchette avers that x-rays of the plaintiff's left wrist on February 27, 2005 and again on March 24, 2005, revealed no injury or fracture. In an amended complaint filed on September 22, 2005, the plaintiff includes facts concerning the February incident involving himself and defendant Philippi, but he includes no allegations that defendant Philippi is currently threatening or harassing him. Accordingly, the court concludes that the plaintiff's allegations that defendant Philippi may try to harass or harm him because of the February 10, 2005 incident are speculative.

Absent any allegations of irreparable injury, the plaintiff fails to satisfy the first requirement for the issuance of injunctive relief. Because there is no showing of irreparable harm, the court need not examine the other requirements for the issuance of injunctive relief. See Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990) (party seeking injunctive relief must demonstrate irreparable harm "before other requirements for the issuance of an injunction will be considered"). Accordingly, the plaintiff's motions for injunctive relief are being denied.

## Conclusion

The Motions for Preliminary and Emergency Injunctive Relief [docs. ## 4, 10], for Emergency Conference [doc. # 3] and for Prejudgment Liens [doc. # 3] are hereby DENIED.

It is so ordered.

Dated this 28th day of September 2005, at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge