# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
SALA-THIEL THOMPSON           :
                             :              PRISONER
       v.                     :      Case No. 3:04CV2084(AWT)
                             :
THERESA LANTZ, ET AL.         :
-----------------------------x
```

## RULING ON MOTION TO DISMISS

The plaintiff, Sala-Thiel Thompson, filed this civil rights action pro se pursuant to 28 U.S.C. § 1915 against employees of the State of Connecticut Department of Correction and employees of the Federal Bureau of Prisons. The State of Connecticut defendants are Commissioner Theresa Lantz, Warden Wayne Choinski, Major Lynn Milling, Director of Offender Classification and Population Management Fred Levesque, District Administrator Mark Strange, Correctional Officer Steven Philippi, and Warden James Dzurenda. In counts one through seven, the plaintiff alleges, inter alia, that after his transfer to the Connecticut Department of Correction in January 2004, the State of Connecticut defendants denied him access to the courts, transferred him to a maximum security prison without a hearing, deprived him of his right to practice his religion, assaulted him and denied him a single cell and access to the grievance system. Pending before the court is the State of Connecticut defendants' motion to dismiss. For the reasons set forth below, the motion is being granted in part and denied in part.

I.    **Standard of Review**

When considering a motion to dismiss, the court accepts as
true all factual allegations in the complaint and draws inferences
from these allegations in the light most favorable to the
plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),
overruled on other grounds by Davis v. Scherer, 468 U.S. 183
(1984); Flores v. Southern Peru Copper Corp., 414 F.3d 233, 237 (2d
Cir. 2003).  The court considers not whether the plaintiff
ultimately will prevail, but whether he has stated a claim upon
which relief may be granted so that he should be entitled to offer
evidence to support his claim.  See York v. Association of Bar of
City of New York, 286 F.3d 122, 125 (2d Cir.), cert. denied, 537
U.S. 1089 (2002).  Although detailed allegations are not required,
the complaint must include sufficient facts to afford the
defendants fair notice of the claims and the grounds upon which
they are based and to demonstrate a right to relief.  See Bell
Atlantic v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).

When ruling on a motion to dismiss, the court may consider the
allegations in the complaint, any documents attached to the
complaint and other facts of which judicial notice may be taken.
See Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir.
1993).  In its review of a motion to dismiss, the Second Circuit
"ordinarily require[s] the district courts to give substantial
leeway to pro se litigants. . . ."  Gomes v. Avco Corp., 964 F.2d

1330, 1335 (2d Cir. 1992).

## II.  **Factual Allegations**

The court assumes that the following allegations, taken from the amended complaint, are true.

On January 13, 2004, federal prison officials transferred the plaintiff to the State of Connecticut Department of Correction pursuant to an Intergovernmental Agreement between Connecticut and the Federal Bureau of Prisons.  On January 30, 2004, a hearing was held to determine whether the plaintiff should be housed in administrative segregation at Northern Correctional Institution ("Northern").  On February 2, 2004, a hearing officer issued a decision recommending the plaintiff's placement in administrative segregation based on the plaintiff's extensive disciplinary history in the Federal Bureau of Prisons.  On February 4, 2004, Fred Levesque authorized the plaintiff's placement in administrative segregation based on plaintiff's extensive disciplinary history in the Federal Bureau of Prisons and his poor adjustment in the prior correctional facility.  The plaintiff asserts that Connecticut correctional officials failed to provide him with a hearing or opportunity to present evidence or witnesses prior to his placement in administrative segregation.  The plaintiff also claims there was no basis for his confinement in administrative segregation.

All of the plaintiff's legal books and other legal materials were lost during his transfer to Connecticut.  From January 2004 to

September 2004, the plaintiff asked Warden Choinski for permission
to use the law library.  Warden Choinski denied his requests.

On September 10, 2004, the plaintiff was transferred to
Cheshire Correctional Institution ("Cheshire").  Warden Dzurenda
denied the plaintiff access to the law library.  Commissioner Lantz
failed to respond to his complaints of lack of access to a law
library.  The plaintiff claims that his cases were dismissed
because he was unable to defend them.

Beginning in January 2005, the plaintiff requested kosher
meals, but Department of Correction officials denied the requests.
The plaintiff claims he became ill from eating non-kosher meals.
Wardens Choinski and Dzurenda either denied or did not respond to
the plaintiff's requests for kosher meals and medical treatment for
the symptoms he was experiencing from eating non-kosher meals.

During the plaintiff's incarceration at Northern in 2004, he
was housed in a cell by himself.  On September 10, 2004, the
plaintiff was transferred from Northern to Cheshire and placed in a
cell with another inmate.  When the plaintiff refused to be housed
in a double cell, he was taken to segregation.  Warden Dzurenda
denied the plaintiff's request for a single cell and Mark Strange
denied the plaintiff's appeal of that decision.  Commissioner Lantz
did not respond to the plaintiff's complaints about being placed in
a cell with another inmate.

On December 24, 2004, Warden Dzurenda found the plaintiff had

4

abused the inmate grievance procedure and placed him on grievance restriction for six months.  Pursuant to this restriction, the plaintiff was only permitted to file emergency grievances and line grievances relating to his property.  The plaintiff complained to Commissioner Lantz regarding the grievance restriction.  On June 7, 2005, District Administrator Mark Strange responded on the Commissioner's behalf and indicated that the Warden's suspension of his line grievance privileges was in compliance with the Department of Correction's Administrative Directives.

On February 10, 2005, Officer Steven Philippi assaulted the plaintiff at Northern because the plaintiff had filed this lawsuit against Warden Dzurenda.  The plaintiff sustained injuries to his hands as a result of the assault.  Officer Philippi issued a false disciplinary report accusing the plaintiff of assaulting him. Subsequently, a disciplinary hearing officer found the plaintiff guilty of assaulting Officer Philippi.  The plaintiff was sanctioned in the form of thirty days of punitive segregation, ninety days of loss of phone privileges and thirty days of loss of recreation.

In April 2005, prison officials held a hearing and concluded that the plaintiff should be placed on Administrative Segregation status and transferred to Northern due to his assault on staff at Cheshire.  District Administrator Mark Strange upheld the guilty finding.  The Connecticut State Police also investigated this

5

incident.

The plaintiff alleges that his federal conviction and sentence
are unlawful because the United States did not have jurisdiction to
arrest him for bank robbery because he is a citizen of the Bahamas.
He asserts that due to the fact that the Federal Bureau of Prisons
was unlawfully confining him, it could not transfer him to
Connecticut and Connecticut could not lawfully confine him.  He
argues that his confinement in a Connecticut prison constituted
involuntary servitude in violation of the Thirteenth Amendment.
The plaintiff claims to have addressed this issue with Commissioner
Lantz.

## III. **Discussion**

The State of Connecticut defendants argue that the plaintiff
has no liberty interest in his classification, has failed to state
a claim of denial of access to the courts, has failed to state a
claim of interference with his right to practice his religion, and
has failed to allege that the defendants denied him procedural due
process in connection with the disciplinary report for the assault
on Officer Philippi.  They also argue that the claims for
injunctive relief are moot, the complaint is barred by § 42 U.S.C.
§ 1997e(e), and they are entitled to qualified immunity.

### A.   **Classification**

The plaintiff argues that upon his arrival in Connecticut in
January 2004, defendants Milling and Levesque placed him in

administrative segregation at Northern without a hearing or the opportunity to present evidence or witnesses in violation of his Fourteenth Amendment Due Process rights.  The defendants argue that the documents attached to the plaintiff's complaint and amended complaint demonstrate that the plaintiff received all the process he was due prior to his placement in administrative segregation.

To state a procedural due process claim, the plaintiff must demonstrate that he had a protected liberty interest and was deprived of that interest without being afforded due process of law.  See Sandin v. Conner, 515 U.S. 472, 483-87 (1995).  The Second Circuit has held that an inmate has a protected liberty interest only if the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him or her to suffer an atypical and significant hardship.  See Tellier v. Fields, 280 F.3d 69, 80-81 (2d Cir. 2000).  In Wilkinson v. Austin, 545 U.S. 209 (2005), the Supreme Court applied the holding in Sandin to the placement of inmates in Ohio's Supermax facility. The Court observed that "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"  Id. at 223 (quoting Sandin, 515 U.S. at 484).  The Court concluded that the conditions in the Supermax facility

constituted an atypical and significant hardship and that inmates had a constitutionally protected liberty interest in avoiding confinement under those conditions.

Here, the report of the plaintiff's Administrative Segregation Hearing, attached as an exhibit to the amended complaint, reflects that the plaintiff was placed in administrative segregation at Northern for at least six months, but the plaintiff includes no facts as to the nature of the conditions of that confinement. Thus, he has not alleged that the conditions were atypical of the conditions in general population or that the conditions caused him significant hardship.  The Second Circuit has held, however, that when confinement is of an intermediate duration—between 101 and 305 days—" 'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004) (quoting Colon v. Howard, 215 F.3d 227, 232 (2000)).

The defendants argue that even if the court were to assume that the plaintiff had a constitutionally protected liberty interest in avoiding confinement in administrative segregation, the plaintiff received all the process that he was due.  In light of the inherent security risks involved in prison management, an inmate is provided with sufficient due process prior to an institutional transfer resulting in exceptionally more onerous conditions for an indefinite period of time if the inmate is

provided with notice of the factual basis for the placement and fair opportunity for rebuttal.  See Wilkinson, 545 U.S. at 226.

The documents attached to the amended complaint reflect that on January 26, 2004, a hearing was scheduled to be held on January 30, 2004 to determine whether to place the plaintiff in administrative segregation.  The plaintiff became aware of the hearing date the morning of the day of the hearing, met with the hearing officer before the hearing, and provided him with a written statement, but chose not to attend the hearing.  The plaintiff claimed that the hearing officer denied his request to present witnesses and documentary evidence.  The hearing officer issued a written decision recommending placement in administrative segregation with a review in six months for possible reintegration into general population, and Fred Levesque, the Director of the Office of Classification and Program Management authorized the plaintiff's placement in administrative segregation based on his past behavioral history in the Federal Bureau of Prisons.  The plaintiff received a copy of this written decision and filed an appeal of the decision raising multiple claims and attaching exhibits.  Fred Levesque denied the appeal on March 11, 2004.

The plaintiff has failed to allege facts that could establish that he did not receive the procedural due process protections to which he was entitled prior to his placement in administrative segregation in February 2004.  Accordingly, the motion to dismiss

-9-

on this ground is being granted.

**B.   Access to Courts**

The plaintiff asserts that when he was transferred from a federal prison to the State of Connecticut Department of Correction, many of his legal books and materials were lost in transit.  He also claims that Warden Choinski denied him access to a law library at Northern from January to September 2004, Legal Assistance to Prisoners refused to assist him with legal matters, and Commissioner Lantz failed to respond to his complaints about lack of access to legal assistance.  He also asserts that in September 2004, after he was transferred to Cheshire Correctional Institution, Warden Dzurenda denied him access to a law library. The plaintiff generally asserts that he was unable to defend his cases and as a result cases were dismissed.  The defendants argue that the plaintiff has failed to state a claim of denial of access to the courts.

It is well-settled that inmates have a First Amendment right of access to the courts.  See Bounds v. Smith, 430 U.S. 817, 828 (1977) (modified on other grounds by Lewis v. Casey, 518 U.S. 343, 350 (1996)).  In Lewis v. Casey, the Court held that in order to establish a violation of the fundamental right of access to courts, an inmate must allege facts demonstrating an actual injury stemming from the defendants' unconstitutional conduct.  See id. at 349.  To establish an actual injury, an inmate must show that the defendants

-10-

took or were responsible for actions that hindered his efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  See Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 2002)).  An inmate's conclusory assertion that he suffered prejudice is insufficient to establish a denial of access to courts claim.  See Arce v. Walker, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999) (citing Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999)).

Neither Bounds nor Lewis require prison officials to provide a law library to inmates.  See Lewis, 518 U.S. at 351 ("Bounds did not create an abstract, freestanding right to a law library or legal assistance. . . .").  The documents attached to the amended complaint reflect that the plaintiff submitted multiple requests to use the law library located on the death row unit at Northern, but prison officials, including Warden Choinski, informed the plaintiff that the law library was only available to inmates on death row. Warden Choinski also informed the plaintiff that the Inmates' Legal Assistance Program, the Public Defender's Office, and Yale Law School were available to assist him.  The plaintiff contacted the Inmates' Legal Assistance Program in January and February 2004.  In March 2004, an attorney employed by the program informed the plaintiff that she could not assist him with criminal matters, but could assist him with cases involving allegations of unconstitutional conditions of confinement at Connecticut prison

-11-

facilities as long as those allegations stated a claim upon which
relief could be granted.  When the plaintiff was transferred to
Cheshire, Warden Dzurenda informed the plaintiff that the facility
did not have a law library, but did have a resource center.
Warden Dzurenda also provided the plaintiff with contact
information for two individuals associated with the Bureau of
Prisons who could provide the plaintiff with the copies of federal
case law he had requested and also indicated that the librarian in
the resource center could copy and forward any material the
plaintiff needed that was at his disposal.  The plaintiff does not
allege that he attempted to avail himself of these resources.

This court's docket reflects that the plaintiff has filed four
cases since January 2004.  He has filed a habeas petition
challenging his federal conviction, Thompson v. Choinski, Case No.
04cv823(CFD); a habeas petition challenging conditions of
confinement in the Bureau of Prisons and Connecticut Department of
Correction, Thompson v. Choinski, Case No. 04cv851 (PCD); a second
habeas petition challenging his federal conviction, Thompson v.
Martin, Case No. 05cv826 (PCD); and the present civil rights
action.  One of the habeas petitions, Thompson v. Martin, includes
a table of contents, citations to over thirty cases, and a
thirty-nine page memorandum of law, and the other two habeas
petitions are accompanied by memoranda of law and exhibits.  None
of the habeas petitions were dismissed as technically deficient.

In fact, one was dismissed without prejudice to permit the plaintiff to exhaust his state court remedies as to claims in the petition and has since been reopened pursuant to a mandate of the Second Circuit.  Consequently, the plaintiff has failed to allege facts that would show he has been irreparably harmed by denial of access to a law library.  Accordingly, the motion to dismiss is being granted as to the denial of access to courts claim.

### C.  Double-Celling

The plaintiff alleges that when he arrived at Cheshire in September 2004, he was placed in a cell in the protective custody unit with another inmate.  When the plaintiff refused to remain in a cell with another inmate, prison staff issued him a disciplinary report for flagrant disobedience and transferred him to administrative detention pending a hearing on the disciplinary report.  The plaintiff filed a grievance seeking placement in a cell by himself in the protective custody unit; he claimed he was in danger of being assaulted by other inmates.  Warden Dzurenda denied the grievance and Administrator Strange denied the plaintiff's appeal of Warden Dzurenda's decision.  The plaintiff claims that he sent a request to be placed on single cell status to Commissioner Lantz, but she failed to respond.

The requirement that an inmate share a cell with another inmate is not unconstitutional.  See Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981)(holding that double-celling inmates in an

overcrowded facility was not unconstitutional).  Furthermore, the plaintiff does not allege that he suffered any injury or harm as a result in his confinement in a cell with another inmate in the protective custody unit at Cheshire.  The plaintiff's claim that defendants Dzurenda, Strange, and Lantz improperly denied his request to be housed in a single cell in the protective custody unit at Cheshire fails to state a claim upon which relief may be granted.  Accordingly, the motion to dismiss is being granted as to that claim.

**D.   Claims Relating to Defendant Philippi**

The plaintiff alleges that on February 10, 2005, defendant Philippi assaulted him, causing injuries to his hands, and that defendant Philippi issued a false disciplinary against him in connection with that assault.  Falsely accusing an inmate of misconduct does not itself violate the Constitution.  See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.") (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."), cert. denied, 485 U.S. 982 (1988)).  The plaintiff alleges that a hearing was held regarding the assault charge, that he appeared at the hearing, and that two inmate

-14-

witness statements were provided to the hearing officer.  At the conclusion of the hearing, the disciplinary hearing officer found him guilty and imposed sanctions of thirty days in punitive segregation, ninety days loss of phone privileges, and thirty days loss of recreation.  The plaintiff appealed the guilty finding to District Administrator Mark Strange who upheld the decision of the hearing officer.  The plaintiff claims that he was not afforded due process at the hearing because his witnesses did not testify at the hearing and the hearing officer did not review the videotape of the incident.

To state a procedural due process claim, a plaintiff must demonstrate that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law.  See Sandin v. Conner, 515 U.S. 472, 483-487 (1995).  The Second Circuit has held that an inmate has a protected liberty interest only if the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him or her to suffer an atypical and significant hardship.  See Tellier v. Fields, 280 F.3d 69, 80-81 (2d Cir. 2000).

Under Sandin, the court must compare the conditions described by the plaintiff with the conditions an inmate generally can expect from prison life to determine whether the conditions constitute an atypical and significant hardship.  The Court found that a prisoner's 30-day confinement "did not present the type of

atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486. Applying the Sandin analysis, the Second Circuit also found that a prisoner's 30-day confinement to his cell followed by a 30-day loss of recreation, commissary privileges, packages, and telephone use did not state a cognizable claim for denial of due process. See Frazier v. Coughlin, 81 F.3d 313, 317-18 (2d Cir. 1996). Courts considering sanctions similar or greater to those imposed on the plaintiff have held that they do not rise to the level of an atypical and significant hardship. See, e.g., Sealey v. Giltner, 197 F.3d 578, 589 (2d Cir. 1999) (holding that 101-day confinement did not meet the threshold of atypical and significant hardship); Rosario v Selsky, No. 94cv6872, 1995 WL 764178, at *4 (S.D.N.Y. Dec. 28, 1995)(85-day confinement).

Inmates should reasonably anticipate confinement in segregation. See Russell v. Scully, 15 F.3d 219, 221 (2d Cir. 1993). The court concludes that the sanctions imposed on the plaintiff as a result of the disciplinary hearing were not an atypical and significant hardship and do not give rise to a liberty interest cognizable under section 1983. Accordingly, the motion to dismiss is being granted as to this claim.

The defendants did not address the plaintiff's claim of being assaulted by defendant Philippi, and that claim remains pending.

### E.   __Kosher Meals__

The plaintiff asserts that since his transfer to Connecticut in January 2004, defendants Dzurenda and Choinski have denied him kosher meals.  He claims that he has suffered from vomiting and diarrhea due to eating non-kosher food.  The defendants argue that the plaintiff has no First Amendment right to pre-packaged kosher meals and that the common fare menu meets the plaintiff's nutritional needs.  In deference to the plaintiff's pro se status, the court construes the plaintiff's claim as also arising under § 3 of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.  RLUIPA protects inmates by providing that a government shall not "impose a substantial burden" on the "religious exercise" of inmates in certain institutions unless the government shows that the burden furthers a compelling governmental interest by the least restrictive means. 42 U.S.C. § 2000cc-1(a).

Although inmates enjoy the protections of the First Amendment, considerations of institutional safety and security, with due deference being afforded decisions by the prison administration, limit inmates' free exercise rights.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348-49 (1987) (holding that a prison regulation limiting First Amendment rights is valid if reasonably related to legitimate penological interests).

As a threshold matter, an inmate must show that the disputed

policy substantially burdens his sincerely held religious beliefs. See Ford v. McGinnis, 352 F.3d 582, 591 (2d Cir. 2003).  The defendants then bear the burden of identifying the legitimate penological interests that justify the challenged conduct.  See id. at 595.

The amended complaint, when viewed in the light most favorable to the plaintiff, alleges that defendants Choinski and Dzurenda significantly interfered with the plaintiff's sincerely held religious beliefs.  See Ford, 352 F.3d at 597 (holding that prisoners have a "clearly established" right "to a diet consistent with [their] religious scruples"); Bass v. Coughlin, 976 F.2d 98, 99 (2d Cir. 1992) (per curiam) (reaffirming Kahane v. Carlson, 527 F.2d 492, 495 (2d Cir. 1975) (finding that an Orthodox Jewish inmate had a right to provision of kosher meals)).  The defendants argue that simplified food service, security, and budget constraints are legitimate penological interests and cite to decisions from other circuits.  However, the defendants do not make clear what the Department of Correction's penological justifications were for not providing inmates who required it with kosher food in 2004 and 2005.  Thus, the defendants have not met their burden under Ford, and the motion to dismiss is being denied as to the First Amendment claim.  Any claims the plaintiff might have under RLUIPA remain as well.

**F.    Qualified Immunity**

The defendants argue that they are entitled to qualified immunity as to the plaintiff's religious diet claim.  The doctrine of qualified immunity protects government officials from liability for damages caused by the performance of discretionary official functions if their conduct does not violate a clearly established right of which a reasonable person would have been aware.  See Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007).

When considering a claim of qualified immunity, the court first determines whether, construing the facts favorably to the non-moving party, there is a violation of a constitutionally protected right.  If the court finds a violation, it next must determine whether, considering the facts of the case before it, that right was clearly established at the time of the incident. See Saucier v. Katz, 533 U.S. 194, 201 (2001).  A right is "'clearly established . . . . if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity.'" Tellier v. Fields, 280 F.3d 69, 84 (2d Cir. 2000) (quoting Russell v. Coughlin, 910 F.2d 75, 78 (2d Cir. 1990)).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that [the] conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

The court has concluded that the plaintiff states a First

-19-

Amendment claim for denial of his right to free exercise of religion by alleging that defendants Dzurenda and Choinski refused to provide him with a kosher diet.  The law regarding dietary religious claims was clearly established by the Second Circuit in 1975.  See Kahane, 527 F.2d at 496; Bass, 976 F.2d at 99.  The court cannot conclude, based on the facts alleged in the amended complaint, that a reasonable correctional official would understand that the common fare diet was sufficient to meet the plaintiff's kosher dietary needs.  Thus, the motion to dismiss on the ground that the defendants are shielded from liability by qualified immunity is being denied.  See Bass, 976 F.2d at 99 (holding that prison officials were not entitled to qualified immunity when they refused inmate's religiously motivated dietary requests).

**G.   Emotional Injury**

The defendants contend that the plaintiff's claims should be dismissed because he seeks recovery for mental and emotional injury without a showing that he suffered a physical injury.  In opposition, the plaintiff argues that he seeks recovery for injuries resulting from the assault by defendant Philippi and that he suffered physical symptoms because he had to eat non-kosher meals.

"No Federal civil action may be brought by a prisoner confined in jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing

-20-

of physical injury." 42 U.S.C. § 1997e(e).  The Second Circuit has interpreted this statute to require that a prisoner seeking compensatory damages for a constitutional violation demonstrate physical injury.  See Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002).

The Second Circuit has held that claims for First Amendment violations are not subject to the physical injury requirement of § 1997e(e).  See Thompson, 284 F.3d at 417 (citing Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998)).  In addition, the plaintiff contends that he suffered injuries to his hands as a result of an assault on him by defendant Philippi and that he experienced vomiting, heartburn, and diarrhea.  Accordingly, the defendants' motion to dismiss on this ground is being denied.

### H.   Injunctive and Declaratory Relief

The State of Connecticut defendants argue that any claims for injunctive and declaratory relief against them are moot because the plaintiff has been transferred back to federal prison.

The Second Circuit has held that an inmate's request for declaratory and injunctive relief against correctional staff or conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged or transferred to a different correctional institution.  See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976).  See also Martin-Trigona v. Shiff, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or

controversy is that the relief sought can no longer be given or is no longer needed"). As the plaintiff is now being held at the United States Penitentiary in Lewisburg, Pennsylvania, his claims for injunctive and declaratory relief against the State of Connecticut defendants are moot, and the motion to dismiss is being granted as to those claims.

**IV. <u>Conclusion</u>**

The State of Connecticut defendants' Motion to Dismiss (Doc. No. 59) is hereby **GRANTED** in part and **DENIED** in part. The counts for injunctive and declaratory relief against the State of Connecticut defendants and the access to courts, classification, and double-celling claims against the State of Connecticut defendants set forth in counts one, two and four of the amended complaint are hereby **DISMISSED**. Because all counts against defendants Levesque and Milling are being dismissed, they should be terminated as defendants in this case.

The remaining claims against the State of Connecticut defendants are the claim that defendants Lantz, Strange and Dzurenda interfered with the plaintiff's right to file grievances by placing him on grievance restriction on December 28, 2004, set forth in count five; the claim against defendant Lantz that the plaintiff's confinement in a Connecticut prison constituted involuntary servitude in violation of the Thirteenth Amendment, set forth in count seven; the claim that defendant Philippi assaulted

the plaintiff on February 10, 2005, set forth in count six; and the claim that defendants Dzurenda and Choinski impermissibly denied the plaintiff kosher meals in violation of the First Amendment and RLUIPA, set forth in count three.

It is so ordered.

Dated this 3rd day of September 2008 at Hartford, Connecticut.


_____/s/AWT_____
       Alvin W. Thompson
    United States District Judge