UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SALA-THIEL THOMPSON, | ) | ***PRISONER CASE*** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No.  3:04-CV-02084(AWT)(DFM) |
| | ) | |
| THERESA LANTZ ET AL., | ) | |
| | ) | |
| Defendants. | ) | July 28, 2011 |

<u>FEDERAL DEFENDANTS' MEMORANDUM IN OPPOSITION TO THE PLAINTIFF'S
MOTION TO ALTER OR AMEND A JUDGMENT</u>

The United States Bureau of Prisons, Harley Lappin, Harrell Watts, G.L.
Hershberger, Russell Rau, and Thomas Wilson (the "Federal Defendants") hereby
submit this Memorandum in Opposition to the Plaintiff's Motion to Alter or Amend a
Judgment.

**I.      Background**

The Court is well-acquainted with the extensive history of this case. [*See* Ruling
on Federal Defendants' Motion for Summary Judgment, Dkt. #169 at 2-8.] The facts are
briefly summarized here for completeness.

**A.      Prison Escape Incident**

This case stems from an attempted prison break at the Metropolitan Correctional
Center in Miami, Florida on July 19, 1991. As memorialized in a July 20 incident report
("Incident Report"), four prisoners, including Salathiel Thompson ("Plaintiff"), attempted
to escape from the Metropolitan Correctional Center in Miami, Florida. Plaintiff argues
that he had nothing to do with the attempt, and that the Incident Report was willfully and
maliciously falsified by the Federal Defendants in order to deprive him of his

constitutional rights.

According to the Incident Report, during the course of the attempt, three prisoners took a guard hostage and shot at another officer who arrived at the scene. One of the prisoners also used wire cutters to breach the prison's fence. Although Plaintiff was not one of the inmates that physically seized the guard, he was found in a nearby area that was off-limits to inmates and was implicated by a confidential informant in the attempt. Prison staff suspected that he was acting as a lookout.

The U.S. Attorney's Office brought criminal charges against all four defendants as a result of the attempt, but on November 2, 1992, the United States District Court determined there was insufficient evidence to place Plaintiff at the scene of the crime. It therefore dismissed the charges against him. After the District Court dismissed the charges, the Incident Report was released to the Unit Disciplinary Committee (UDC) for administrative action. The UDC referred it to a Discipline Hearing Officer (DHO), who conducted a hearing on December 1, 1992. The DHO conducted two additional rehearings on June 8 and July 20, 1993 to remedy procedural deficiencies.

On July 15, 1993, Plaintiff was informed of the July 20 rehearing and reminded of his rights. The DHO reviewed the relevant evidence, including 46 pages of material provided by the Plaintiff and reports and memoranda provided by prison personnel. He also noted that the standards of guilt were lower in administrative proceedings than in criminal ones. He ultimately determined that Plaintiff actively planned the escape attempt and was responsible for the events that occurred on July 19. Plaintiff was found guilty of four violations of the inmate discipline code: attempted killing, attempted escape, introduction of a weapon and taking a hostage, and introduction of a hazardous

tool. The DHO sanctioned him with loss of good conduct time and a total of 240 days of disciplinary segregation, and recommended an institutional transfer. It also provided him with a copy of the DHO's report giving the reasons for disciplinary action.

**B.    Prison Transfer and Further Disciplinary Actions**

Following the July 1991 incident, the Federal Bureau of Prisons (BOP) transferred Plaintiff to the United States Penitentiary (USP) in Atlanta, Georgia. He returned to the Metropolitan Correctional Facility in Miami to face criminal charges on September 24, and was then sent to the USP in Lompoc, California, on March 27, 1992. After several more transfers, he was moved to the USP in Marion, Illinois, on December 21, 1993.

Throughout this period, Plaintiff incurred additional disciplinary sanctions. At USP Miami, he was cited three times for assault without serious injury, once for threatening bodily harm, and once for possessing unauthorized items. He was sanctioned again at USP Lompoc for assault without serious injury. At USP Marion, he was cited for assault without serious injury, threatening bodily harm, and insolence to a staff member. These infractions continued as late as 2003, when Plaintiff received an incident report for refusing to work or to accept a program assignment because he refused to return to the general population. At the time, Plaintiff was housed in a Special Housing Unit (SHU) because he believed that his life was in danger. He felt this way because his criminal case was cited in law books and mentioned that he implicated his co-defendants in a bank robbery, and because he claimed to be a former police officer in the Bahamas. However, prison officials investigated the matter and found no threat to his safety.

On June 5, 2000, Plaintiff was moved to the Cheshire Correctional Facility as

part of a prisoner swap between the BOP and the Connecticut Department of Correction. As explained in the transfer paperwork, he was selected because USP Marion knew he would be a long-term SHU case even though USP Marion did not find there was any security threat against him.

In April 2007, Plaintiff was transferred back to the Federal system. He is presently incarcerated at the USP in Lewisburg, Pennsylvania.

**C.     Plaintiff's Lawsuit and Summary Judgment**

On December 9, 2004, Plaintiff filed suit against the Federal Defendants, including the named individuals in both their official and individual capacities. He alleged that the defendants conspired to (1) violate his due process rights during the disciplinary proceedings, (2) incorrectly classify him as a maximum security inmate, and (3) transfer him from a federal to a state prison facility. The district court granted summary judgment as to the Federal Defendants on March 28, 2011, the order which Plaintiff now appeals.

The Court's summary judgment order rested on two independent grounds. First, it had no jurisdiction to hear Plaintiff's claims against the Federal Defendants, either in their personal or official capacities. Second, Plaintiff failed to allege a cognizable injury. Either line of reasoning was an adequate basis for summary judgment.

The Court concluded it did not have jurisdiction over claims against the Bureau of Prisons or the individual Federal Defendants in their official capacities because the United States and its agencies are protected by the doctrine of sovereign immunity. [Dkt. #169 at 10-11.] Nor could it hear the claims against any of the Federal Defendants in their individual capacities because it lacked personal jurisdiction pursuant to

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996). As the

Court reasoned, "[P]laintiff does not assert facts showing that the Federal Defendants

transact *any* business in the State of Connecticut . . . . [or] have *any* personal

connection with the State." [Dkt. #169 at 13 (emphasis added).] Furthermore, "the only

evidence is that the claimed conspiracy existed entirely outside the State." [Dkt. #169 at

13.] Lastly, none of the claimed injuries occurred in Connecticut.[Dkt. #169 at 15.]

Although it felt it lacked jurisdiction, the Court nevertheless proceeded to the

merits, concluding that Plaintiff failed to state any cognizable injury for which the Court

could order relief. First, it found that the Federal Defendants adduced sufficient

evidence to show that they satisfied the relevant due process requirements for prison

disciplinary proceedings, as set out in *Manley v. Bronson*, 657 F. Supp. 832 (D. Conn.

1987) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)). Plaintiff did not present any

controverting evidence as to the procedural sufficiency of the hearing, so there was no

genuine issue of material fact to adjudicate. [Dkt. #169 at 16.] Second, prisoners have

no protected liberty interest in their security classification per *Moody v. Daggett*, 429

U.S. 78 (1976) and *Pugliese v. Nelson,* 617 F.2d 916 (2d Cir. 1980). Thus, Plaintiff had

no procedural due process claim for any change in classification or institutional transfer

as a result of the 1991 incident. [Dkt. #169 at 16-17.] Third, Plaintiff had no claim of

unlawful transfer because under 18 U.S.C. § 3621(b) the Bureau of Prisons had

authority to transfer prisoners between correctional facilities (including State facilities)

"at any time." [Dkt. #169 at 18.] Additionally, the Federal Defendants provided valid

peneological explanations for Plaintiff's classification and transfer, and therefore

Plaintiff had no claim of retaliation. [Dkt. #169 at 19-20.]

On June 23, 2011, Plaintiff filed a Motion to Alter or Amend a Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. [Mot. To Alter at 3.] It was docketed by this Court on June 28.

## II.   Legal Standard

A Rule 59 motion must be filed within 28 days of the entry of the underlying judgement, Fed. R. Civ. Pro. 59(e), but Plaintiff did not file his motion until approximately three months after the district court granted summary judgment. He explains that he missed the filing deadline because he did not receive notice of the judgment until June 6, 2011. [Mot. to Alter at 1.]

The Second Circuit has explained that, although the decision to grant or deny a Rule 59 motion rests with the discretion of the district court, "[g]enerally, district courts will only amend or alter a judgment pursuant to Rule 59 to correct a clear error of law or prevent manifest injustice." *In re Assicurazioni Generali, S.P.A.*, 592 F.3d 113, 120 (2d Cir. 2010) (citations omitted); *see also Caldrello v. Mercedes Benz of N. Am., Inc.*, 488 F. Supp. 2d 129, 132 (D. Conn. 2007). "A motion to reconsider should not be granted where the moving party is solely attempting to relitigate an issue that already has been decided." *Lesch v. United States*, 372 Fed.Appx. 182, 183 (2d Cir. 2010).[1]

---

[1]The Second Circuit uses the same standard to evaluate "motions for reconsideration" and "motions to amend or alter a judgment." *See City of Hartford v. Chase*, 942 F.2d 130, 133-134 (2d Cir. 1991) (citing C. Wright, A. Miller, E. Cooper & E. Gressman, 16 Federal Practice and Procedure § 3950 at 364 n.7 (1977) ("Any kind of motion that draws into question the correctness of the district court judgment is considered to be a motion 'to alter or amend the judgment' under Civil Rule 59(e). Such a motion may variously be styled a motion to reconsider, a motion for rehearing, a motion to reargue, a motion to vacate, or a motion to set aside the judgment.")).

A successful Rule 59 motion should therefore do more than restate a movant's earlier claims. It must instead "point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Linden v. District Council 1707-AFSCME*, 415 Fed. Appx. 337, 338-39 (2d Cir. 2011) (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)). This is a high bar. *See, e.g.*, *Cordero v. Astrue*, 574 F. Supp. 2d 373, 380 (S.D.N.Y. 2008) ("Reconsideration . . . is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.") (citation and quotes omitted).

## III.   Argument

Plaintiff advances a host of arguments purporting to show that the Court erred when it concluded that it lacked jurisdiction and that Plaintiff alleged no cognizable injuries. These arguments fall into seven categories. First, that he was deprived of due process by the "manufacturing . . . of a false government report." [Brief in Support of Rule 59(e) Motion to Alter or Amend a Judgment, Dkt. #182 at 3.] Second, that his DHO rehearing was not impartial. [Dkt. #182 at 6.] Third, that he was misclassified as a result of the false July 1991 Incident Report. [Dkt. #182 at 10.] Fourth, that the detainer charges by the Bahamian government remain pending. [Dkt. #182 at 17.] Fifth, that the court erred in its immunity analysis. [Dkt. #182 at 18.] Sixth, that the Court erred in its personal jurisdiction analysis. [Dkt. #182 at 22.] Seventh, that the Court committed a litany of factual and legal errors in the course of its order. [Dkt. #182 at 28.] Plaintiff does not dispute that the Court employed the correct legal standard for summary judgment,

arguing only that it misapplied it throughout its order. [Dkt. #182 at 1-2.]

As discussed below, these points are neither persuasive nor sufficient to grant a Rule 59 motion. Plaintiff merely re-alleges (often repeatedly) the same basic claims he has advanced throughout this litigation, and he fails to meaningfully rebut the reasoning of the Court's summary judgment order. He does not point to any genuine errors of law or to any other factors which would give rise to manifest injustice. In sum, nothing he argues can "reasonably be expected to alter the conclusion reached by the court." *Linden*, 415 Fed. Appx. at 339. As a result, his motion should be denied.

### A.      Due Process Violations

Plaintiff states that he was deprived of due process because the Incident Report was deliberately falsified as part of a conspiracy to deprive him of his constitutional rights, and he asserts that the Court has not addressed his Fourth and Fifth Amendment claims. [Dkt. #182 at 3.] But Plaintiff's only conceivable Fourth or Fifth Amendment claim is a due process one, which the Court squarely considered and found to be both jurisdictionally defective and lacking on the merits.

He next maintains that the Court failed to recognize the "false & misleading" nature of the Incident Report. [Dkt. #182 at 4.] However, as long as there is "some evidence" that would support the DHO's decision, a reviewing court need only ensure that the administrative proceedings satisfied the requirements of due process. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985). Here, there was abundant evidence—direct and circumstantial—linking Plaintiff to the 1991 incident. Furthermore, the Federal Defendants have provided uncontroverted evidence that they met the

relevant due process requirements. *See* Part III-B (DHO Hearing) *infra.*

Finally, Plaintiff lists five "cognizable injur[ies]" stemming from the DHO's allegedly erroneous decision: loss of good conduct time, the criminal and administrative proceedings stemming from the 1991 incident, transfer to a higher security prison, change in security classification, and beatings and other attempts to put Plaintiff in physical danger. [Dkt. #182 at 4-5.] But merely providing a conclusory list of cognizable injuries–all of which restate in various forms the injuries the Court rejected in its summary judgment order (e.g., imposition of a stricter security classification or an administrative finding of involvement for the 1991 incident)–does not make it so. As the Court properly reasoned in its summary judgment order, none of the asserted injuries suffice to state a claim.

**B.     DHO Hearing**

Plaintiff next claims that his administrative proceedings failed to satisfy due process. Plaintiff did have a due process interest in the good conduct time he lost as a result of the DHO's order. *Wolff v. McDonnell,* 418 U.S. 539, 555-56 (1974). However, in the prison disciplinary context, due process requires only that the prisoner receive advance written notice of the charges, an opportunity to present testimony and documentary evidence to an impartial decision-maker, and a written explanation for the discipline. *Id.* at 564-66.

As noted above, Plaintiff received written notice of the charges more than 24 hours before his appearance before the DHO; he had the opportunity to present witnesses and documentary evidence; the hearing was conducted by an impartial

decision-maker; and the DHO provided Plaintiff with a written explanation for the disciplinary measures. Although Plaintiff disputes various factual elements of the DHO's decision, his only challenge to these procedural requirements is that the regional director "directed" the DHO to find Plaintiff guilty. [Dkt. #182 at 8.] This charge is wholly groundless. Regional Director Matthews "direct[ed] the DHO to conduct a rehearing" based on newly discovered evidence. [Plaintiff's Exhibit List, Dkt. #182-1 Ex. 3.] Plaintiff provides no reason to think that the decision-making process was itself biased. Nor does he challenge the fact that the government met its other procedural obligations.[2] It is still the case, therefore, that "[P]laintiff has not created a genuine issue of material fact as to . . . due process." [Dkt. #169 at 16.]

## C.    Security Classification and Transfer

As the Court noted, it is well settled that Plaintiff does not have a constitutionally protected interest in his security classification or incarceration in any particular prison. [Dkt. #169 at 17-18.] *See also Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir. 1980) (finding no due process right and citing Supreme Court precedents). Therefore, he cannot establish that his prison transfers or security classification deprived him of a protected interest. Furthermore, any claim for declaratory or injunctive relief as a result of the transfer to State prison is moot because Plaintiff returned to the Federal system in 2007. [Dkt. #169 at 18 n.4.]

---

[2] Plaintiff does attack the sufficiency of procedures at the first two DHO hearings. [Dkt. #182 at 6-7.] However, whatever shortcomings existed were cured by the third rehearing, which was ordered specifically to rectify any procedural errors.

Plaintiff also asserts that his security classification was attributable only to the fabricated Incident Report and its consequences, not to his disciplinary record more broadly. [Dkt. #182 at 15-17.] However, the record is replete with indications that Plaintiff was transferred and classified in the service of valid penelogical goals. Plaintiff had an extensive disciplinary record apart from his involvement in the 1991 incident and he refused to return to the general population from SHU. A conclusory statement that his classification and transfer history "singularly arose out of the charges alleged [in the Incident Report]," [Dkt. #182 at 17], is not "evidence [that] counter[s] the Federal Defendants' evidence." [Dkt. #169 at 20.][3]

### D.      Outstanding Detainer Charges

Although plaintiff is correct that the Court does not explicitly reference the detainer issue in its decision of March 28, 2011, the Court does refer to the case of *Moody v. Daggett,* 429 U.S. 78, 88 (1976). [Dkt. #169 at 17.] *Moody* is a case in which the Supreme Court found that a prisoner's security status was a matter in the discretion of prison administration even in the face of an outstanding parole violation status for which the defendant had not been given due notice.

### E.      Sovereign Immunity Analysis

The Court found, correctly, that if a plaintiff asserts a constitutional tort claim

---

[3]Plaintiff also argues that his transfer was retaliatory because the five inmates transferred from federal to State prisons in the 2004 swap all had active suits against Bureau of Prison employees. [Dkt. #182 at 37.] As the Court has noted, it views these claims "with skepticism and particular care." [Dkt. #169 at 19 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).] Setting aside the fact that the Federal government transferred ten prisoners to Connecticut, not five, this new allegation does not rebut the valid peneological goals which motivated the transfer. [*See* Dkt. #182-1 Ex. 13.]

against the United States, there is no general waiver of sovereign immunity. *Keene Corp. v. United States*, 700 F.2d 839, 845 n.13 (2d Cir.) (1983). Absent such a waiver, claims alleging civil rights violations pursuant to *Bivens v. Six Unknown Federal Bureau of Narcotics Agents*, 403 U.S. 388 (1971), cannot be brought against the United States or any of its agencies.

Plaintiff argues that sovereign immunity applies only to governments, not to individuals named in their official capacity, so the Court's dismissal of charges against the individual Federal Defendants on that basis was error. [Dkt. #182 at 18.] He is simply mistaken. "The shield of sovereign immunity protects not only the United States but also its agencies and officers when the latter act in their official capacities." *Dotson v. Griesa*, 398 F.3d 156, 177 (2d Cir. 2005). Because the government has not consented to be sued, Plaintiff's action is barred with respect to the BOP and to the individual Federal Defendants acting in their official capacities.[4]

## F.   Personal Jurisdiction Analysis

Personal jurisdiction requires that the defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Johnston v. Arbitrium (Cayman Island) Handels AG*, 198 F.3d 342, 348 (2d Cir. 1999) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945). The minimum contacts must be established

---

[4]Plaintiff appears to be under the misimpression that the notice from the Bureau of Prisons informing him that his claim for damages under the Federal Torts Claims Act had been denied and noting his option to appeal the decision pursuant to 28 CFR § 14.9 was *itself* a waiver of immunity. [*See* Dkt. #182 at 19; Dkt. #182-1 at 1 (Exhibit List captioning the notice "FBOP Consent to Sue Letter").]

by the purposeful acts of the defendant. *Computer Associates Intern., Inc. V. Altai, Inc.*,

126 F.3d 365, 371 (2d Cir. 1997) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

475 (1985)). Because Plaintiff failed to show any contacts between the Federal

Defendants and the State of Connecticut, the Court ordered summary judgment on

grounds of personal jurisdiction. [Dkt. #169 at 11-15.]

In his brief, Plaintiff identifies two contacts with Connecticut: intergovernmental

payments associated with the prisoner transfer between the Federal government and

Connecticut, and a prisoner history package sent to the Department of Corrections by

the BOP. [Dkt. #182 at 26.] However, these connections occurred in the course the

Federal Defendants' official capacities (for which they already have sovereign immunity).

They do not create jurisdiction over the Federal Defendants in their *personal* capacities.

Moreover, Plaintiff does not point to any reason why he could not have argued these

points when the Court was considering the original motion.

Plaintiff repeats that a conspiracy existed between State and Federal officials.

[Dkt. #182 at 27-28.] But with respect to the crucial question–whether the conspiracy

(assuming it existed in the first place) had any Connecticut nexus–he asserts only that

the Federal Defendants conspired to create the false Incident Report, which they then

forwarded to officials in Connecticut. [Dkt. #182 at 28.] On the basis of that report, he

continues, Connecticut officials "place[d] [Plaintiff] in a State Supermax Control Unit"

with similar conditions of confinement as he faced in the Federal prison system. [Dkt.

#182 at 28.] Even if the Court were to credit these bare allegations of conspiracy,

however, "[t]he Plaintiff presents no evidence of discussions or meetings between any of

the State Defendants and any of the Federal Defendants." [Dkt. #169 at 13.] There is

thus no dispute that the alleged conspiracy took place entirely outside Connecticut, and the Court was correct to dismiss for lack of personal jurisdiction.[5]

## G.  Miscellaneous Objections

The final ten pages of Plaintiff's brief canvass a scattered series of factual disputes with the Court's order. Most of these points simply restate earlier assertions. [*Compare* Dkt. #182 at 31 ("Federal defendants waived defense of personal jurisdiction by extensive participation in the merits") *with* Dkt. #182 at 23 ("The defendants has [sic] fully participated in litigation on the merits . . . [and have] by this conduct, waived" their personal jurisdiction defense).] None point to clear errors of law or manifest injustice that would justify granting the motion to alter or amend.

WHEREFORE, it is prayed that the Court deny the Plaintiff's Motion for to Amend or Alter a Judgement Pursuant to Rule 59(e).

Respectfully submitted

David B. Fein
United States Attorney

JOHN B. HUGHES
Assistant U. S. Attorney
Chief , Civil Division

---

[5]In *Burton v. Northern Dutchess Hospital*, 106 F.R.D. 477 (S.D.N.Y. 1985), which Plaintiff cites as evidence that the Federal Defendants waived their jurisdiction defense, the defendants contested personal jurisdiction, but then had "three and one-half years" during which they "repeatedly . . . failed . . . to contest the sufficiency of service of process." *Id.* at 481. They further engaged in conduct "inconsistent with [the] assertion that the court lacks personal jurisdiction over them," such as consenting to a discovery schedule and joining in repeated requests for extension of discovery. *Id.* That is a far cry from the Federal Defendants, who promptly asserted the defense in a responsive pleading and moved for summary judgment. [Dkt. #169 at 11 n.2.]

Alan Marc Soloway
Assistant U. S. Attorney
157 Church Street - 23rd fl.
New Haven, CT 06508
(203) 821-3700 FAX (203) 773-5373
Federal Bar No.  Ct01581
alan.soloway@usdoj.gov

Jed Glickstein
Law Student Intern on the Memorandum
Yale University School of Law

## CERTIFICATION

I hereby certify that a copy of the foregoing pleading was mailed to the following

on  July 28, 2010 to the following by postage prepaid first class mail;

Salathiel Thompson
USP Lewisburg

OUTSIDE OF ENVELOPE WAS MARKED
"LEGAL MAIL-OPEN ONLY IN PRESENCE OF INMATE"

Steven Strom
Attorney General's Office
Public Safety and Special Revenue
MacKenzie Hall
110 Sherman Street
Hartford, Ct. 06105

Amy Standefer Malott
Senior Attorney
Federal Bureau of Prisons
MCC Chicago
71 West Van Buren Street
Chicago, IL. 60605

Joseph McGuire
Attorney
North Central Office
Bureau of Prisons
Robert A. Young Building
1222 Spruce Street
Suite 6.101
St. Louis , MO. 63103

David J. Elliott
Martin Jan Magnusson
Day Pitney LLP
242 Trumbull Street
Hartford, Ct. 06103-1212

Alan Marc Soloway

Page 16 of  16